# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTIE M. PEREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-291-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Christie M. Perez requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 4, 1979, and was thirty-three years old at the time of the administrative hearing (Tr. 27, 142). She completed her GED, and has worked as a bench assembler, cashier, companion, personal care attendant, and CNA (Tr. 19, 163). The claimant alleges inability to work since January 18, 2012, due to depression, high anxiety, back pain, leg pain, excessive worrying, frequent headaches, and change in mood (Tr. 162).

## Procedural History

On September 12, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Deborah L. Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 31, 2014 (Tr. 9-21). The Appeals Council denied review, so ALJ Rose's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she can lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk/sit for six hours in an eight-hour workday. Additionally, she found that the claimant was able to perform simple, routine,

and some complex tasks, such as those involved in semi-skilled work. Additionally, she found the claimant could work in proximity to others, have superficial and incidental work-related interaction with co-workers and supervisors, but no interaction with the public in order to complete job duties (Tr. 15). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could do in the national and regional economies, *e. g.*, inspector and hand packager, bagger, and poultry cleaner (Tr. 19-20).

**Review**

The claimant argues that the ALJ erred by: (i) failing to properly evaluate the nonmedical source evidence, including from the counseling center and a Third Party Function Report; (ii) failing to account for all her impairments at step five; and (iii) failing to conduct a proper credibility assessment. Because the Court finds that the ALJ failed to properly evaluate the claimant's mental impairments, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The medical evidence reveals that the claimant had the severe impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, depression, and an anxiety-related disorder (Tr. 11). As relevant to this appeal, the medical records reveal that on March 26, 2012, the claimant presented to CREOKS for evaluation and treatment. Upon intake and her reports of anxiety and depression, the claimant was assessed with anxiety disorder not otherwise specified, and assigned a Global Assessment of Functioning (GAF) score of 49 (Tr. 253-254). She was given a fair prognosis based on treatment adherence (Tr. 256).

On October 16, 2012, Dr. Kathleen Ward, Ph.D., conducted a mental status examination of the claimant (Tr. 269). She noted that the claimant made little eye contact, sat with a slumped posture, wiped tears as she spoke, laughed nervously from time to time, and walked with a pained, side-to-side gait (Tr. 270). Dr. Ward found the claimant had some minor deficits in social judgment and problem solving, but had no bizarre or delusional thinking and appeared to have an estimated average intellectual range (Tr. 270-271). Dr. Ward noted that the claimant presented with ongoing anxiety punctuated by acute episodes, past trauma appeared to significantly affect treatment considerations and social anxiety, and Dr. Ward believed the claimant was a good candidate for individual therapy but would not tolerate a group setting (Tr. 271). She concluded the claimant needed cognitive behavioral therapy intervention or other anxiety treatment and that her emotional modulation was "very poor" on the day of evaluation (Tr. 271). Further treatment records from CREOKS indicate that she continued to present for medication management and therapy, but missed a number of appointments (Tr. 299-376). A July 3, 2012 note indicates the claimant did not like people and the waiting room was too much for her, that she cried easily, and that she did not like one of her medications but also had not been taking it daily (Tr. 374). A July 31, 2013 telemedication note indicates that the claimant had been out of her medications since early June, she could not control her emotions, she had ongoing issues with therapies, and she had even moved her children to a smaller school so that *she* would have fewer people to interact with (Tr. 349).

On November 11, 2012, Dr. David G. Atkins, Ph.D., reviewed the claimant's records and found she was moderately limited in the three typical areas, then stated that the claimant could perform simple and some complex tasks in a familiar setting with routine supervision, relate to others on a superficial work basis but should avoid frequent contact with the general public, and that she could adapt to a work situation (Tr. 65). Dr. Diane Hyde, Ph.D., determined the identical mental RFC would apply, and marked the same three boxes, except that she found the claimant was markedly limited in the ability to interact appropriately with the general public (Tr. 79-81).

In her written opinion at step two, the ALJ discussed which impairments she found to be severe, as well as much of the medical evidence in the record, including Dr. Ward's mental diagnostic assessment and the mental health treatment records from CREOKS (Tr. 11-14). At step two, she assigned "some but not great weight" to Dr. Ward's opinion because she did not assess the claimant with depression (Tr. 12). As to the treatment notes from CREOKS, the ALJ summarized many of the claimant's reports, as well as the assigned GAF of 49, but gave the GAF no consideration because counselors are not considered "acceptable medical sources" (Tr. 13). At step four, the ALJ summarized the claimant's hearing testimony, then mentioned some of the remaining medical evidence but largely only in relation to the claimant's credibility. Specifically, the ALJ noted the claimant's CREOKS treatment records again, noting that she missed a number of medication appointments, and concluding, "So, she goes to the appointments, gets her medications, then runs out of medications and her symptoms get worse" (Tr. 17). She then assumed that this meant that her medications worked, the claimant was not

compliant, and that this was a poor reflection on the claimant's credibility because if the symptoms were as bad as alleged, there would be more frequent changes to the claimant's medication (Tr. 17). She then assigned some, but not great weight to the state reviewing physicians who found the claimant had anxiety but not depression, then concluded that the claimant had the above-listed RFC (Tr. 18-19).

The claimant argues that the ALJ improperly evaluated the nonmedical evidence in the record, specifically when she rejected the GAF score assigned by CREOKS at intake. Although the score was not assigned by a physician, it was assigned by a Licensed Professional Counselor, someone trained in the field of mental health and whose opinion should have been properly evaluated as an "other source" opinion at step four, as opposed to step two. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether

claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, at *4-5; 20 C.F.R. § 404.1527(d). *See also Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citations omitted]. The ALJ's rejection of an other source opinion, without appropriate consideration, represents a significant misunderstanding with regard to the evidence and directly relates to findings regarding the claimant's RFC. This error is especially concerning when the ALJ engages in such rejection at step two, rather than at step four.

Furthermore, the ALJ's rejection of the score itself was improper. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job," *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added] [unpublished opinion], *citing Oslin*, 69 Fed. Appx. at 947. Instead of simply rejecting GAF scores because they were not assigned by an acceptable medical source, the ALJ should at a minimum have discussed the claimant's sub-50 score and explained whether it was due to any occupational factors. *See Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence."); *Givens v. Astrue*, 251 Fed. Appx.

561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.").

The ALJ also erred in evaluating the claimant's credibility. As part of her credibility analysis, the ALJ determined (without supporting medical documentation) that the claimant's impairments would improve if she were compliant with her medications and thus largely faulted the claimant for her failure to follow treatment. In considering the impact of such failure, the ALJ must follow a four-part test: (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and (iv) whether the excuse was justified. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Hecker*, 775 F.2d 1104, 1107 (10th Cir. 1985). *See also Miranda v. Barnhart*, 205 Fed. Appx. 638, 642 (10th Cir. 2005) ("'[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7. In this case, however, the ALJ failed to discuss *any* of these factors in relation to his finding that claimant was noncompliant with medical treatment, instead preferring to fault the claimant in an effort to find her not disabled.

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2016.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**